[Civ. No. 1691.   Third Appellate District.—November 10, 1917.]

## WILLIAM CAULFIELD et al., Respondents, v. W. GUGLIELMETTI, Copartners, etc., et al., Appellants.

RESCISSION OF CONTRACT—ACTION FOR BALANCE DUE—PLEADING—FINDING—LACK OF VARIANCE.—In an action for the recovery of the balance due under an agreement for the rescission of a contract of sale of personal property, where the complaint set up an express contract of surrender, release, and rescission based upon a money consideration, and the answer denied the same, the finding that the sum due was less than alleged in the complaint is not a departure from the cause of action stated in the complaint.

ID.—FINDINGS ON MATERIAL ISSUES—DUTY OF COURT.—It is the duty of the court to make findings on all the material issues raised in a case and upon which testimony is given, regardless of how or by whom the issues are introduced.

APPEAL from a judgment of the Superior Court of Sonoma County. Thomas C. Denny, Judge.

The facts are stated in the opinion of the court.

W. H. Early, and A. H. Crook, for Appellant.

Gil P. Hall, and E. J. Dole, for Respondents.

HART, J.—The first four paragraphs of the complaint in the action are also alleged, in practically the same language, in the cross-complaint of defendants. They are: (1) That defendants are copartners, doing business as dairymen in the county of Sonoma, under the firm name and style of W. & R. Guglielmetti. (2) "That, on the fourteenth day of September, 1914, defendants and William Caulfield, for the benefit of himself and Thomas Caulfield, made their agreement in writing, in the words and figures as follows, to wit:

" 'Petaluma, Cal., Sept. 14/14.

" 'We agree to sell to Will Caulfield 71 cows, 18 heifers, 40 calves, for the sum of $6,300.00, and reserve the right to pick out any of the above stock, and either replace them with other as good cows or whatever they may be or pay cows that are short of the above number $59.14 each, heifers, $50.00 each and calves $30.00 each.

" ' (Signed)

" 'WM. CAULFIELD,

" 'W. and R. GUGLIELMETTI.

" 'Per W. J. GUGLIELMETTI.' "

(3) That at the time of the execution of the above agreement said William Caulfield, on behalf of himself and the said Thomas Caulfield, "and in pursuance to the provisions of said agreement, paid defendants the sum of one thousand dollars." (4) That the said Thomas Caulfield then and there became and ever since has been and is now the owner of an undivided one-half interest in and to said agreement (in the cross-complaint, "and the personalty therein described"), "and all rights accruing therefrom, and in and

to all claims mentioned in this complaint'' (in the cross-complaint, ''in and to all claims arising thereon'').

Paragraph 5 of the complaint reads: ''That on or about October 1st, 1914, defendants agreed to pay to plaintiffs the sum of $20.00 in lawful money and to return to plaintiffs all sums theretofore paid on account of said agreement, by plaintiffs, provided plaintiffs would surrender, release and rescind said agreement; and said plaintiffs accepted said promise on the part of defendants as aforesaid, and pursuant thereto and in consideration thereof, did surrender, release and rescind said agreement, and thereafter defendants paid to plaintiffs the said sum of $20.00 and $580.00 and no more, and there now remains due and unpaid from defendants, the sum of $420.00, no part of which has ever been paid, although demand therefor has been made.''

In the answer the allegations of said paragraph 5 are denied, and it is alleged that, on September 30, 1914, defendants were ready and willing to perform said contract and tendered to plaintiffs said stock in pursuance of the terms of said contract; that plaintiffs unqualifiedly refused to accept said stock ''and did offer to said defendants the sum of twenty dollars to rescind and cancel and annul said agreement,'' which was refused by defendants; ''that pursuant to the terms of said agreement said plaintiffs were obligated to pay to said defendants for and on account of said stock, the sum of six thousand three hundred dollars, and by reason of the said refusal of said plaintiffs to comply with the terms of said agreement, said defendants, in order to mitigate the damages they had sustained by reason thereof, were compelled to and did, after having notified said plaintiffs of their intention to so do, sell said stock for the sum of five thousand nine hundred dollars,'' the highest price they could receive; that defendants paid to plaintiffs six hundred dollars, the difference between six thousand three hundred dollars, which plaintiffs were obligated to pay, and five thousand nine hundred dollars, the sum defendants received.

The cross-complaint alleges the tender and refusal to accept said stock, as above set forth, and proceeds: ''That said plaintiffs did refuse to pay the balance of the purchase price due, and for the period of thirty days thereafter continued to refuse to comply with the provisions of said agreement; that by reason of said refusal, defendants were compelled to and did

furnish and provide for, for thirty days, the feed, keep, pasturage and care of said stock," the reasonable value of which was alleged to be five hundred dollars. The allegations of the cross-complaint are denied by plaintiffs.

The judgment was that plaintiffs do have and recover from defendants "the sum of four hundred dollars, the balance due on the purchase price of the stock mentioned in plaintiffs' complaint, together with interest on the sum of one thousand dollars, from October 1, 1914, to April 26, 1915, and interest on the sum of four hundred dollars from April 26, 1915," together with costs.

The appeal is by the defendants from said judgment.

Appellants specify alleged errors of the court in rulings upon the admission of evidence and in failing to determine certain issues. Insufficiency of the evidence to support the judgment in several designated particulars is also relied upon.

The court found as follows: That the written agreement of September 14, 1914, was made and entered into by the parties; that on said date, and on said agreement, the plaintiffs paid to the defendants the sum of one thousand dollars; that, on October 1, 1914, the defendants agreed to return to the plaintiffs "all sums theretofore paid on account of said agreement by plaintiffs, provided plaintiffs would surrender, release and rescind said agreement," and that the plaintiffs thereupon accepted that proposition, and, pursuant to said agreement of rescission did surrender, release and rescind said agreement, and thereafter the defendants paid to the plaintiffs the sum of six hundred dollars and no more, "and there now remains due and unpaid from the defendants to plaintiffs the sum of four hundred dollars, no part of which has ever been paid," etc. No finding was made as to the bonus of twenty dollars which the complaint alleges the defendants agreed to pay the plaintiffs as a part of the consideration for the rescission; but the court did make findings upon the issues, above briefly recapitulated, made by the cross-complaint of the defendants.

The appellants contend that the findings and conclusions of law are at variance with the issues raised by the pleadings and the essential theory of the case following the issues so made. In support of this position, counsel say: "The complaint set up an express contract of surrender, release, and rescission based upon a consideration of twenty dollars and the answer denies the same. The court finds that no such

contract existed, and, although it is not alleged in the com-
plaint that appellants violated their contract, nor that they
agreed to sell to respondents a straight dairy (without the
right to pick) for six thousand three hundred dollars, and,
although in the trial of the case no such contention was made,
and the case was not tried on any such issue, the court found
contrary to the terms of the agreement, and without any evi-
dence thereof: 1. That appellants agreed to sell a straight
dairy for six thousand three hundred dollars, without a right
to pick; 2. That the appellants violated their agreement by
demanding six thousand five hundred dollars for a straight
dairy, without the right to pick; 3. That there was a rescis-
sion by mutual assent of the parties, although appellants did
not agree to pay the respondents the sum of twenty dollars.''

It is true, as counsel for the defendants assert, that the
issues and the only issues tendered by the complaint of the
plaintiffs and accepted by.the answer were: 1. Whether the
agreement of September 14, 1914, was, on the first day of Octo-
ber, 1914, rescinded by the mutual consent of the parties and
the plaintiffs thereby released from the obligations thereof;
2. Whether there was still due the plaintiffs, under the agree-
ment of rescission, the sum of $420. And, upon the issues so
raised, it is clear that the findings (the first above referred
to) support the conclusions of law and the judgment.

As seen, the court found, substantially, that the parties
agreed to rescind the agreement of September 14, 1914, upon
the consideration that the defendants would take back the
stock sold and would return to the plaintiffs all sums there-
tofore paid by them to the defendants on said contract of
sale, and that in pursuance of the last made agreement (the
agreement to rescind) the defendants paid to the plaintiffs,
of the sum of one thousand dollars found by the court to
have been paid by the plaintiffs to the defendants at the time
of the execution of the agreement of sale, the sum of six hun-
dred dollars, leaving as a balance due the plaintiffs from the
defendants under the agreement of rescission the sum of four
hundred dollars. These findings clearly coincide with the
issues as tendered by the complaint, save as to the averment
that the defendants agreed to pay the plaintiffs, for a rescis-
sion and surrender of the contract of sale, a bonus of twenty
dollars—that is, a sum in that amount in excess of the amount
paid by the plaintiffs on the contract of sale; and it is equally

clear that the conclusions of law and the judgment follow
those findings. But it appears to be the theory of counsel
for the appellants that, because the court failed to make any
finding as to the allegation in the complaint that the defend-
ants agreed to pay the plaintiffs, for a rescission and sur-
render of the contract of sale, the sum of twenty dollars over
and above "all sums theretofore paid" by the plaintiffs to
the defendants under the contract of sale, the agreement of
rescission found by the court is not the agreement of rescis-
sion set out in the complaint. In other words, as we under-
stand counsel, the claim is that for the reason stated the cause
of action stated in the complaint is wholly at variance
with the cause of action on which the court framed its find-
ings—that is to say, that the finding as to the agreement of
rescission made by the parties is so far different from the
one pleaded by the plaintiffs that it involves a departure from
the cause of action stated in the complaint. There is no force
in this contention. The complaint declares upon a contract
whereby (it is alleged) the defendants agreed to pay the
plaintiffs a certain sum of money, and the action is no differ-
ent from the ordinary suit upon a contract to recover money
due thereunder. The answer denies that any such contract
was made. There was, therefore, a clear and direct issue ten-
dered and accepted upon these questions: Did the parties
enter into such a contract as is described in the complaint,
and, if so, is the amount alleged to be due the plaintiffs from
the defendants or any sum under said contract still due,
owing, and unpaid to the former? It was, of course, for the
court to determine these questions from the evidence, and, if
finding that such an agreement was entered into between the
parties, how much, if anything, the evidence showed that the
plaintiffs were entitled to recover thereunder; and the fact
that the court found that the evidence disclosed that the sum
due the plaintiffs from the defendants on the agreement was
less than the sum alleged to be due could not have the effect
of so varying or modifying or changing the agreement as
pleaded as to constitute the finding as so made a departure
from the cause of action stated in the complaint.

The criticism that the court made a number of findings
which were wholly outside the issues raised by the complaint
of the plaintiffs and the answer thereto is aimed at a number
of findings which appear to have been made in response to

issues raised by the cross-complaint of the defendants and the answer thereto by the plaintiffs. The case sought to be made by the cross-complaint was, as above shown, briefly this: That the contract of sale having been entered into between the parties and a payment of one thousand dollars thereon made by the plaintiffs, the latter thereafter and for a period of thirty days refused further to carry out their part of the contract and that the defendants were, therefore, "compelled to and did furnish and provide for the period of, to wit, thirty days, feed, keep, pasturage and care for said stock; that the reasonable value of said feed, keep, pasturage and care of said stock is the sum of five hundred dollars," and that the defendants have been damaged in said sum by reason of the refusal of the plaintiffs to comply with the terms and conditions of the said contract of sale.

The court made several distinct findings specifically finding that said allegations of the cross-complaint were untrue, and, as stated, it appears to be those findings that counsel claim were beyond the issues in the case.

It was the duty of the court to make findings upon all the material issues raised in the case and upon which testimony was given, regardless of how or by whom those issues were introduced therein. And there was testimony introduced in support of the issues tendered by the cross-complaint, as we shall presently show. But, conceding for the purposes of the argument, that the findings referred to involved matters entirely foreign to the issue, still the proposition remains that the findings first above referred to and which respond to the issues raised by the complaint of the plaintiffs and the answer thereto of the defendants are sufficient to support the judgment, and the findings criticised by counsel may, therefore, be wholly eliminated, without disturbing or affecting the stability of the judgment in the slightest degree.

There is no ground apparent from the record before us upon which the contention may be maintained that the findings responding to the issues made by the complaint and the answer thereto do not derive sufficient support from the evidence. In support of this statement, we may here refer briefly to some of the testimony introduced by the plaintiffs, following which will likewise be presented the testimony given by the defendants, whereby they sought to sustain the allegations of their cross-complaint.

Thomas Caulfield (one of the plaintiffs), who had lived in Petaluma for about thirty-seven years and was associated with his son, William, in the cattle business, testified: "On September 14, 1914, my son agreed to purchase from Guglielmetti Bros. certain stock for the sum of six thousand three hundred dollars, on which we paid on account one thousand dollars. On or about October 1, 1914, we went for the cattle and to pay the balance of the money. We met William Guglielmetti and Robert Guglielmetti there. Mr. Maggetti came up there and wanted to buy the cattle, and I wanted the cattle to all go together; I would be willing to give a little bit to get them all, it was a good pick. I asked Guglielmetti to let them all go, the ones he had picked out, and he said 'No,' but he would for a certain sum of money, and I said 'No,' I would take one hundred dollars profit for the whole thing, if I had any. To that he said, 'Well, you will get two hundred dollars and more.' I said, 'No,' I'll take one hundred dollars.' And he said, 'You won't take a hundred dollars.' And I said, 'Yes, I'll take half of that,' and he said, 'You won't do anything of the kind,' and I says, 'I will, I'll take twenty dollars, but I don't want to take it from you boys because that would look like backing out, but I'll take twenty dollars,' and he said, 'I will take them,' and I says, 'All right, they are yours. Get your horses and pick them out.' We went home and left the stock there. Mr. Guglielmetti afterward paid me six hundred dollars. I did not read the contract signed by my son and Mr. Guglielmetti; the boy just told me what it was. I have been engaged in the cattle business about thirty years, and my son has been in business with me ever since he has been able to walk around." The witness said that Mr. Maggetti was out there to buy the stock but "when he looked over this stock he turned them down."

William Caulfield testified: "On the 14th of October, in company with my father and another man, I visited the Guglielmetti ranch to take away the cattle we bought there. When we reached the ranch we got into a little argument over some cows that were picked out, and my father said he would not stand for picking out that many cows, topping them off; and they said, 'Well, that will be all right, you will make three or four hundred dollars on them anyhow,' and he said, 'No, I won't.' He says, 'I will take a hundred dollars for them'; then he said, 'I will take fifty dollars,' and then he

said, 'I will go better than that; I will take twenty dollars,' and Bob says, 'We will give you twenty dollars on the deal,' and father said, 'No, I wouldn't like to sell them to you; that would be too much like backing out,' and he said, 'No, it will not; we will give you that,' and he insisted on it, and my father said, 'All right, the cattle is yours,' and we went back to town. I paid one thousand dollars on the deal and they returned six hundred dollars in April. I had made a demand for the return of the one thousand dollars.''

On cross-examination, the witness said: ''I did not offer to sell the cattle back, nor did my father. He did not want to sell them back to him at all. Q. What did you do? A. We sold them back to him. Q. And when you sold them back you sold them back for one thousand and twenty dollars, didn't you? A. Yes, sir. That was not in writing; it was an oral agreement. Mr. Maggetti came out there at our request to look at the cattle. He looked at them and refused to take them. It was then that I went back to give Mr. Guglielmetti a check for the balance and take the cattle, and he wanted two hundred dollars more. He topped off the top cows, picked the tops off, he picked them over and picked out the best stock. I prepared to sign a check at that time, and my father spoke and said something about straight dairy stock. He said he wanted them all straight; he did not want so many of them picked out. The Guglielmettis said they would turn them in straight for six thousand five hundred dollars, and we told them to turn them in straight for six thousand three hundred dollars, and we would give them a check and take them along, but the Guglielmettis would not accept that. My father told them, 'I could not get out at that price, with these cattle all topped off.' I do not know how many were picked out. We had a little kind of oral agreement that he would pick out five or six cows, and put in five or six more out of the dairy that looked just as good.''
The witness was asked to explain what he meant by ''straight dairy stock'' and said: ''Well, you know, when you pick cattle out, and put out all of the best lookers and your best cows, you know what you have got left; that is not straight dairy stock; straight dairy stock is where you leave the best lookers in. My father wanted straight dairy stock for six thousand three hundred dollars.''

C. J. Caulfield, a son of Thomas Caulfield, testified to making demand upon one of the Guglielmettis for the return of one thousand and twenty dollars, and plaintiffs thereupon rested their case.

W. J. Guglielmetti testified that all the terms of the contract with plaintiffs were not contained in the written agreement; that the one thousand dollar payment and the time for removal of the cattle from the ranch were not in the contract; that the cattle were to be delivered not later than October 1st. Referring to the conversation on October 1st, the witness said that William Caulfield drove up and said, "Don't mix those cows before my father gets here; he wants a straight dairy"; that, when the father came along he said he wanted a straight dairy, and the witness told him, "If you want straight dairy you will have to pay six thousand five hundred dollars, or take them as the contract for six thousand three hundred dollars." He said that the father replied: "I will pay six thousand five hundred dollars, I will take straight dairy," to which the witness said, "Very well." He continued: "And what brought about the twenty dollars is, when I told Mr. Caulfield that he asked Mr. Maggetti too much money, he said something about twenty dollars, that he was willing to make a profit of twenty dollars, and that's about all that was said. There was no offer made to or accepted by us, and we didn't agree to pay him for that stock, or anything of the kind. I explained to Mr. Caulfield why they had to be delivered not later than October 1, 1914; that our lease was up on the last day of September, that on the first day of October Mr. Lanzi would take possession of the ranch, and we would have no more pasture for the cattle. No demand was made upon us for the payment of any money that day, and there was no suggestion made to us on that day to return to the Caulfields one thousand dollars. It is not true that on or about the first day of October we entered into an agreement to pay the plaintiffs the sum of twenty dollars in lawful money and return to them all sums of money theretofore paid on account of said agreement, provided they would surrender, release and rescind our agreement." The witness testified as to feeding the stock from the 1st of October to the 17th of November and as to the cost of such feed. On cross-examination the witness said that, on the 1st of October, he had taken twenty-seven or twenty-eight head

from the herd and had put in an equal number of other stock, and that William Caulfield had agreed that that might be done.

R. P. Guglielmetti testified that he showed Will Caulfield the stock some time in September and that he was present on October 1, 1914, and heard the conversation between the Caulfields and his brother. He said, "He said he would pay six thousand five hundred dollars for a straight dairy, or six thousand three hundred dollars take them the way the agreement called for. The old gentleman, Mr. Caulfield, said that." On cross-examination the witness seemed somewhat confused as to the exact conversation on October 1st, but what he finally said was that his brother said he wanted six thousand five hundred dollars for a straight dairy stock, and that Thomas Caulfield said he would not pay it.

S. J. Guglielmetti, a brother of the defendants, testified that he was present and heard the conversation on October 1st. His version of it was as follows: "William Caulfield started to do some figuring, and he put down six thousand three hundred dollars, or mentioned six thousand three hundred dollars, that is, for the cows as they stood in the corral, and my brother says, 'No, the agreement was six thousand five hundred dollars,' and Mr. Caulfield, the old man, says, 'I offered six thousand five hundred dollars if Maggetti would buy the cattle,' and then my brother Bill says, 'You probably held the price a little too high on Maggetti, or you would have sold the cattle,' and Mr. Caulfield said, 'No, I would be willing to sell those cattle at a profit of twenty dollars.' My brother told him six thousand five hundred dollars for straight dairy, or six thousand three hundred dollars for what they called the picked dairy. The plaintiffs would not pay six thousand three hundred dollars for the dairy as picked, and my brother insisted upon picking for the six thousand three hundred dollars, or six thousand five hundred dollars for the straight dairy. There was no offer made by either of my brothers to purchase this stock for twenty dollars. My brothers did not say anything when Mr. Caulfield said that he would take twenty dollars for his bargain on the cattle. Mr. Caulfield says to his father, 'You can't do that; you give the boys a hundred dollars for their trouble.'" On rebuttal, William Caulfield said that he did not make the remark last testified to.

It cannot be doubted that the foregoing shows: 1. That there is sufficient support to the findings responding to the issues raised by the original pleadings of the parties; 2. That there is some testimony addressed to the support of the averments of the cross-complaint, and that, therefore, the court was obliged to make findings as to the issues thus raised.

If it may be said that the court erred by its failure to find as to that part of the agreement of rescission as it is alleged in the complaint to the effect that the defendants agreed to pay the plaintiff the sum of twenty dollars, in addition to making a return of the money theretofore paid on the contract of sale by the plaintiffs, the reply is that the error, if error it is, is obviously without prejudice to the appellants.

There is no substantial merit in this appeal. The judgment is therefore affirmed.

Chipman, P. J., and Burnett, J., concurred.